IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES McCHAN,

        Plaintiff,

vs.                                                                     No. CIV 99-1327 JC/LFG

ROB PERRY, et al.,

        Defendants.

## **MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[1]

This is a *pro se, in forma pauperis* civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff James McChan ("McChan") filed this action against numerous corrections officials in New Mexico and Kansas, alleging that they failed to provide adequate care for his periodontal disease, in violation of the Eighth Amendment.

The Court dismissed all claims against Kansas corrections officials, as well various claims against a number of New Mexico officials [Docs. 8,9]. McChan appealed this ruling, and the appeal was dismissed by the Tenth Circuit Court of Appeals on August 31, 2000.

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1),file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

The Court ordered defendants to submit a Martinez Report[2] on the incidents alleged in McChan's complaint. The parties were notified that the Martinez Report could be used in deciding whether to grant summary judgment of Plaintiff's claims. Defendant submitted the report [Doc. 47], and McChan filed a response [Doc. 50]. The matter is now ripe for resolution on summary judgment.

Pursuant to Rule 56(c), F. R. Civ. P., the Court may grant summary judgment if the pleadings, depositions, answers to interrogatories and admissions or affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The opposing party must be given notice and an opportunity to respond, as provided in Rule 56. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

Defendants, having filed a Martinez Report, are in the same position as a movant for summary judgment and therefore carry the burden of establishing that there is no genuine issue of material fact, but they may discharge this burden by showing an absence of evidence to support the plaintiff's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct.2548 (1986). Once the movants meet their burden, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on a material matter. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The party opposing the motion may not rest on his pleadings, mere argument, or contention but must set forth specific facts through admissible evidence, showing there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof; if he cannot make such a showing, summary judgment is appropriate. Celotex, 477 U.S. at 324.

McChan alleges that his serious dental condition was neglected by defendants, to such an

---

[2]The Court may order the defendant in a case brought by a prisoner proceeding *pro se* to submit a special report referred to as a Martinez report. The report is an investigation of the incident which is the basis of the lawsuit. *See*, Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).

2

extent that it violated the constitutional guarantee against cruel and unusual punishment. The medical records provided in the Martinez Report confirm that McChan did indeed have a serious problem with his gums and teeth. The records also indicate that McChan received extensive dental treatment during his stay in New Mexico corrections facilities. The thrust of his argument, however, is that the treatment he received was the wrong choice, and that he should have been referred to a specialist for periodontal surgery. He also complains that he was denied antibiotics when they were needed. The Court finds, as a matter of law, that Defendants' method of treating McChan's condition did not rise to the level of a constitutional violation and that summary judgment is therefore appropriate.

**Factual Background**

McChan was transferred to the New Mexico corrections system on or about December 22, 1996. He spent approximately three and a half years in various New Mexico corrections units and was transferred back to Kansas on May 12, 2000. In their Martinez Report, Defendants set forth a chronology of McChan's dental treatment at the Western New Mexico Correctional Facility, Central New Mexico Correctional Facility, and Southern New Mexico Correctional Facility ("SNMCF"). They also supplied copies of dental and medical records, as directed by the Court, to support their statement of the facts. For the most part, McChan does not dispute the factual narrative but rather takes issue with how the facts should be interpreted. The history of his dental treatment in New Mexico correctional facilities is as follows.

McChan's dental problems were documented before he arrived in New Mexico in December 1996. On a medical history report dated April 1, 1994, McChan indicated that he suffered from a number of different medical conditions, including "severe tooth or gum trouble." In September 1995, he was seen in the health services unit at the Leavenworth, Kansas prison complaining of gum pain

3

on chewing. He was diagnosed with "regressive gum disease" and prescribed Ibuprofen. (Ex. B to Doc. 47).[3]

McChan apparently felt, even before being transferred to New Mexico, that he needed periodontal surgery. On April 22, 1996, McChan stated to a medical provider in the Kansas correctional system that he desired periodontal surgery. The provider discussed corrections regulations with McChan and noted that a letter would be written, apparently to the regional dental director. He also told the provider at this visit that he had gum infections; however, the provider examined McChan's gums and found no infection. (Ex. F to Doc. 50).

Also in 1996, McChan filed a grievance with the Kansas corrections authorities, stating that he had infected and painful gums and was not able to get treatment. In their response to this grievance, Kansas officials noted that McChan was seen by the regional dental director on March 15, 1996 and was told that the Kansas Prison Health Service does not provide long term periodontal treatment, but that a treatment plan, presumably involving other therapies, would be formulated for his condition. The plan was completed on May 23, 1996. Apparently, periodontal surgery was being contemplated in June 1996, as the grievance response states:

> The plan was formulated and carried out within the provisions of the policies and protocols for dental treatment established by the health care provider and the Department of Corrections . . . and it has been explained to him that treatment beyond the present treatment plan should await both the periodontist's report and a ruling from the health care provider on periodontal surgery.

(Ex. G to Doc. 50).

A few days after his transfer to New Mexico in December 1996, McChan requested a dental

---

[3]All references to exhibits hereafter will refer to exhibits to the Martinez Report [Doc. 47], unless otherwise indicated.

4

appointment, noting that he had "chronic - acute periodontal diseases." (Ex. D). On January 6, 1997, he was seen by a dentist at the Western New Mexico facility. The dental report for that visit notes that five of McChan's teeth might eventually need extraction – numbers 2,3,14, 15, and 31 – but that the "teeth are not mobile as yet." The report indicates that McChan had previously had "perio surgery" and "we will continue treatment on that level." (Ex. E). There is no indication anywhere in the record of previous periodontal surgery, and the source of this notation is not clear. The information may have been provided by McChan, may have occurred prior to the time McChan was in custody, or else, the provider simply assumed from the evidence of McChan's gum recession that surgery had been done.

Later in January 1997, McChan requested another dental appointment, complaining of toothaches, bleeding gums, loose teeth, periodontal disease, "bad decay," and infection. (Ex. F). He was seen on January 27, 1997 at CNMCF. The medical records appear to state that a conservative approach was called for, that prophylactic treatment would be performed, that gingival curettage would be done "if needed," and that no extractions were necessary at that time. (Ex. G). McChan was seen again on February 4 and February 19, 1997, and scraping and root planing were performed. He received instruction in oral hygiene at both these visits. (Ex. G).

McChan's chart was reviewed on May 19, 1997, and it was determined that no dental treatment was needed at that time. There is no indication that McChan requested dental services between May 19 and November 1997. He was seen again on November 7. At this visit, the provider noted loose teeth on the upper right (numbers 2 and 3), with some swelling and sensitivity to cold. McChan requested extraction. Teeth 23-26 had no mobility but did have 4-5 millimeters of gum recession. Teeth 2 and 3 were mobile and showed redness, puffiness of attached gingiva, and 2-3

millimeters recession. The assessment was severe bone loss and generalized periodontal disease. The treatment plan called for extraction of numbers 2 and 3 at the next appointment. McChan was prescribed amoxicillin, an antibiotic. (Exs. G, K).

The extractions were not performed at the next appointment, perhaps because McChan was transferred to SNMCF later in November 1997. His dental chart was reviewed on November 20, and a notation was made to schedule an appointment for the extractions. (Ex. G, K). The medical records state that McChan refused an appointment on November 25, 1997 (Exs. G, K), although he denies that he ever missed or refused an appointment (Doc. 50, at 6). On November 26, he did request a dental appointment (Ex. H); however, a note dated December 3, 1997 indicates that no dental treatment was needed at that time. (Ex. G).

On March 22, 1998, McChan again requested dental treatment, "as I have a[n] existing periodontal problem – teeth bleeding, lo[o]se, need a cleaning and below the surface scraping – teeth, jaw are hurting." (Ex. I). He was seen on March 26, at which time mobility was noted in the posterior teeth, and McChan was told that extractions would be necessary if the teeth became painful.

On April 4, 1998, McChan filed a grievance with SNMCF, in which he expressed his dissatisfaction with the dental department due to lack of dental hygiene services. The grievance itself has apparently been lost. It was not supplied by either party herein, although each party has provided the Court with different documents responding to this grievance. Defendants supplied a memorandum dated April 15, 1998, from the Grievance Officer to the Health Services Administrator, noting that McChan had been advised that there was no dental hygienist on staff at the time, that efforts were underway to fill the vacant position, and that he would be scheduled as soon as possible.

The memo notes that "the inmate indicated that he felt this was reasonable," and that he

6

"appeared satisfied at the plan to meet his dental needs." (Document 31 of McChan dental records, attached to Martinez Report) (hereafter cited in the form, "Document 31"). McChan states in his response to the Martinez Report that he was never given a copy of this document, and he disputes the assertion that he felt the dental treatment was reasonable or satisfactory. (Doc. 50, at 1).

On June 9, 1998, Dr. John W. Stebbins ("Stebbins"), dentist at SNMCF, sent a memorandum to Medical Director Dr. John M. Robertson ("Robertson"), describing McChan's treatment history and giving his opinion that "[n]o periodontist, hygienist, or general dentist can save all these teeth due to the great amount of bone loss and poor oral hygiene of the inmate." Stebbins stated further that he could do deep scaling and cleaning for McChan but hesitated to do so, since this would tag McChan as a "special" case and would mean that "50+ inmates who are in need of deep scaling would clamor and grieve for the services which have been absent since the loss of our hygienist." (Ex. K).

McChan did receive an answer to his grievance, which he attached to his brief. This is a document dated June 11, 1998 and signed by John H. Shanks, Director of the Adult Prisons Division, denying the April 4, 1998 grievance. The document states that Robertson, the medical director, would be contacting Correctional Medical Systems and asking them to schedule McChan for off-site treatment and evaluation, and that Correctional Medical Systems would advise Robertson of the outcome. (Ex. A to Doc. 50).

On June 16, 1998, McChan sent a request to the dental office at SNMCF, stating, "Per John M. Robertson, MD, MPH, Medical Director, I'm to be scheduled for an appointment for an off-site treatment - evaluation, periodontal? Has this been made?" He notes also, "Teeth – gums are still constantly hurting, bleeding, abscesses on gums, infected – teeth growing looser." (Ex. L). Defendants contend that McChan's statement was misleading regarding Robertson's intention to

7

provide periodontal surgery (Doc. 47, at 6). McChan's unsworn assertion in his response to the Martinez Report, that he had been informed on June 11 that he would be evaluated for surgery by an off-site periodontist (Doc. 50, at 8), is apparently a reference to the June 11 Shanks memorandum.

On June 22, 1998, the Director of Nurses at SNMCF sent a memorandum to Robertson, stating that she had given further review to McChan's grievance and recommended that McChan be evaluated for total mouth extractions and dentures. She added, "Given the degree of inmate's periodontal disease, off-site treatment to have his 'teeth scraped' and have periodontal surgery will not help." She noted also that permission for full-mouth extractions would have to be obtained from Kansas correctional authorities, under the interstate compact between the states. (Ex. M; *see also* Interstate Compact included in Martinez Report as Documents 32-43).

On July 7, 1998, Stebbins examined McChan, did gingival probing on all teeth, and noted slight mobility on teeth 3, 7, 9, and 30. He wrote in the chart that he told McChan he would contact Robertson for an OK for periodontal surgery. (Ex. N). On July 7, 1998, Stebbins sent a memorandum to Robertson, describing the periodontal examination performed on July 2. He noted that most of McChan's bottom teeth were within normal range for gum recession and that no mobility was seen in the bottom teeth. The upper teeth had deeper pockets, and several of them had slight degrees of mobility. Stebbins stated further:

> With the improved dental hygiene the patient is showing, and with deep scaling periodically, the teeth could remain for a number of years. I will do a deep scaling of the mouth and observe the results over the next few months. If hygiene remains good and the teeth do not get any more mobile, he should be able to get by for a number of years with annual dental periodontal treatment. At this time I would not recommend full mouth extractions and dentures. I would recommend deep scaling, evaluation of dental hygiene and tooth mobility in one month, and annual periodontal treatments. If inmate

8

> and his teeth do not respond to this regimen, then another evaluation
> needs to be performed.

(Ex. O). In McChan's chart for July 7, Stebbins noted that Robertson had been advised of the July 2 periodontal exam, and of his recommendation for McChan's care, *i.e.*, "it is my opinion that surgery (gingival) is not needed at this time." (Ex. N).

McChan was seen again on October 28, 1998, and dental services were provided. His teeth were scaled and polished. Slight gum pocketing was noted on the lower jaw, and slight to moderate pocketing noted on the upper jaw. McChan told the provider that his gums were producing pus; however, no pus was evident upon probing, although slight gum bleeding was noted. McChan stated he smoked about a pack of cigarettes a day; he was advised to stop smoking. (Ex. N).

There is no indication in the record that McChan requested dental care between October 28, 1998 and May of 1999. On April 22, 1999, his chart was reviewed. The notation for this review states that his periodontal condition "will be evaluated. Whether he can be treated off-site depends on interstate compact arrangements." Scaling was suggested, on a six-month basis. (Ex. N). The chart next notes that McChan failed to appear for an appointment on May 4, 1999, although as noted above, McChan denies that he ever missed or refused an appointment. He was next seen in the dental clinic on May 10, 1999, at which time he complained of painful gums when drinking hot and cold liquids. Scaling and polishing were again performed. Mobility was noted for teeth 2 and 3. The provider wrote that McChan stated he would like to have teeth extracted, if he could get dentures. (Exs. N, P).

On November 9, 1999, McChan requested a dental appointment, complaining of periodontal problems, bleeding, loose teeth, and pain. (Ex. P). He was seen on November 22, 1999. He told

9

the provider at that time that he was concerned about his periodontal disease and that he was supposed to be sent out to see a periodontist. He was examined, but the chart is unclear as to exactly what treatment was given. He was instructed in oral hygiene techniques and told to return as needed. (Ex. P).

On December 12, 1999, McChan requested another appointment, stating that the "whole right side of my mouth is swollen," the roof of the mouth is inflamed, pus and blood are present, and all teeth on the upper right are loose. (Ex. Q). He was seen on December 23. The provider noted McChan's assertion that all his teeth were loose and that he was experiencing bleeding and swelling; however, only one tooth (number 3 on the upper right) was found to have significant mobility. X-rays were taken and options were discussed with McChan. He was told that no periodontal treatment would help the advanced bone loss around tooth 3, and that the only way to eliminate the chronic infection was to extract the teeth. McChan stated that he wanted all of his teeth extracted. He was given an antibiotic and Ibuprofen for pain and was scheduled to return for the extraction of tooth 3. (Ex. P).

The chart notes that McChan failed to appear for his scheduled visit on January 14, 2000. Tooth 3 was extracted on January 20, 2000, with McChan's consent, and he was again given antibiotic and pain medications and told to return as needed. (Ex. N).

Approximately two weeks later, on February 4, 2000, McChan sent a note to the dental clinic, stating that the infection had not cleared up, that the teeth surrounding the extracted tooth had not tightened but rather had become looser, and that he was still experiencing pain. (Ex. R). He was examined on February 8, 2000. Teeth 2 and 31 were found to be mobile, but no swelling was seen. McChan was advised that the area was still healing from the extraction of tooth 3. He was also

advised to have tooth 2 extracted, and perhaps tooth 31, if symptoms continued. He was told to return in one week for a follow-up examination. (Ex. S).

McChan was seen again on February 17, 2000. He was not experiencing pain at this point but stated he was concerned about the long term progress of his bone and tooth loss. He stated he would prefer extraction of all of the teeth and their replacement with dentures. The provider noted that he would consult with Dr. Robertson, then plan for extractions. (Ex. S). On March 1, 2000, McChan was again examined, and impressions were made for dentures. His teeth were not hurting him that day, although he did complain of soreness in the gums and roof of the mouth. The treatment plan discussed with McChan was that, at the next visit, the posterior teeth on the right side, upper and lower, would be extracted. (Id.).

On March 16, McChan wrote a note to the clinic, stating that he was "back from court" and was ready to have the dentist start on his teeth "because they are killing me." (Ex. T). On March 27, 2000, he was seen in the clinic. The provider noted that McChan "still wanted to discuss option of treatment by a periodontist," and that "we will check into it." Tooth 2 was extracted with McChan's consent, and he was again given antibiotics and pain medications. He was told to return per referral. (Ex. S).

On April 14, 2000, McChan sent a note to the dentist, stating that he was told to be ready for a dental appointment at 10 a.m. that day, but that no one came to get him at that time. He asked that the appointment be rescheduled and continued, "Also, maybe you have found out about the periodontal evaluation and treatment? You said you was going to check to make the appointment – we made that impression, and was going to figure out what teeth can be saved to anchor dentures to – Please let me know. Thank you." (Ex. W). It appears that he was examined again on April 25;

a notation for that date states, "no movement on compound - reschedule." It is unclear what this means.

On April 27, 2000, McChan sent another note to the dentist, in which he stated that he had reviewed his dental file and did not see any memos or letters requesting periodontal treatment. He asked whether a request had been made for periodontal treatment as an alternative to extraction, and stated that he thought that the dentist was going to make arrangements "to get me there." He said the nurse could verify that he had several abscesses, accompanied by blood and pus, in the preceding two weeks. (Ex. W). McChan was examined again on May 5, 2000. He told the provider that he had pain and swelling with teeth 7, 27, and 31, but that it "settled down" after he took medications issued by nurses. Teeth 7 and 31 were found to be mobile, but no swelling or discharge was noted. The dentist offered to extract tooth 7 that same day, but McChan refused. He stated he wanted to wait to be seen by a periodontist. (Ex. V).

McChan was transferred back to Kansas on or about May 12, 2000.

## Discussion

McChan contends that Defendants refused and delayed the dental treatment which his serious periodontal condition warranted, and that they refused to provide him with antibiotics as needed, in violation of the Eighth Amendment. There is no question that McChan has had long standing, and understandably painful, problems relating to his teeth and gums. So, too, there is no question that Defendants have on multiple occasions sought to alleviate his problems with dental care and medical treatment. The issue the Court is called upon to decide is whether Defendants violated McChan's Eighth Amendment rights by deliberate indifference to a serious condition.

In <u>Estelle v. Gamble</u>, 429 U. S. 97, 104-05, 97 S. Ct. 285, 291 (1976), the Supreme Court

12

held that, under certain conditions, denial or delay of treatment by prison medical personnel can constitute cruel and unusual punishment in violation of the Eighth Amendment. "'[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983' [citing Estelle v. Gamble] . . . Deliberate indifference may be manifested by intentional denial or delay of access to medical care or intentional interference with treatment." Tanner v. Garner, 978 F. 2d 1268 (Table, text in Westlaw), No. 92-6147, 1992 WL 314964, at *1 (10th Cir. Oct. 21, 1992).

The deliberate indifference standard has two components, one objective and one subjective. Wilson v. Seiter, 501 U. S. 294, 111 S. Ct. 2321 (1991). Plaintiff must make a two-part showing: (1) that the medical need was "sufficiently serious," and (2) that the offending officials acted with a culpable state of mind, in that they must have known about the serious medical need and intentionally refused to provide medical care. Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 809 (10th Cir. 1999), citing Farmer v. Brennan, 511 U. S. 825, 834, 114 S. Ct. 1970, 1977 (1994).

A "serious" medical need is generally seen as one involving a life-threatening situation, or an instance in which it is apparent that delay would exacerbate the prisoner's medical problem or could result in a lifelong handicap or a permanent loss. A delay in medical treatment does not violate a prisoner's constitutional rights unless he can show that the delay resulted in substantial harm. Olson v. Stotts, 9 F. 3d 1475, 1477 (10th Cir. 1993); White v. Colorado, 82 F. 3d 364, 366 (10th Cir. 1996). "Intentional refusal" is more than a negligent diagnosis or an inadvertent failure to provide medical care; rather, Plaintiff must show a culpable state of mind to support his claim of denial of a constitutional right. White, at 367; Handy v. Price, 996 F. 2d 1064, 1067 (10th Cir. 1993).

> [A]n inadvertent failure to provide adequate medical care cannot be
> said to constitute 'an unnecessary and wanton infliction of pain' or to
> be 'repugnant to the conscience of mankind.' Thus, a complaint that

> a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

Estelle, 429 U. S. at 105-06.

In the present case, McChan has not demonstrated "deliberate indifference," or the Defendants' requisite culpable state of mind, to sustain his claims. During his stay in New Mexico correctional facilities between December 1996 and May 2000, McChan was seen in the dental clinic approximately 15 times. The record indicates that each time he requested dental treatment, he was promptly given an appointment. While there was some consideration given to the possibility of referring McChan to an outside periodontist, there are also several notations to the effect that periodontal surgery would not be helpful, given the advanced stage of bone loss and tooth mobility.

*See, e.g.*, clinic note for January 27, 1997, stating that a conservative approach was appropriate for McChan's condition; memorandum from Stebbins dated June 9, 1998, stating that no periodontist, hygienist, or general dentist could save all of McChan's teeth due to the extensive bone loss and poor oral hygiene; memorandum from the Director of Nurses dated June 22, 1998, stating that off-site treatment for periodontal surgery would not help, given the degree of McChan's periodontal disease; clinic note by Stebbins, dated July 7, 1998, indicating that periodic deep scaling and good oral hygiene would likely be sufficient to save McChan's teeth; and clinic note of December 12, 1999 following X-rays, stating that no periodontal treatment would help the advanced bone loss around tooth 3. In addition, Defendant submitted Stebbins' affidavit in which he states that, prior to the extractions, Plaintiff had already sustained a great amount of bone loss due to poor oral hygiene, that in his opinion as a dentist with thirty-five years of practice, no periodontal surgery or other

treatment would have ensured that the Plaintiff would not lose any teeth, and that the dental care given to McChan in New Mexico met the standard of care. (Ex. J).

McChan's opinion of what dental treatment was appropriate differs from that of the corrections dental staff. He sent several notes requesting off-site periodontal surgery, and he stated to several dental care providers that he was expecting to receive such surgery. However, McChan's opinion that he needed periodontal surgery, or his impression that such surgery had been promised, does not create a standard of care nor does Defendants' failure to provide such treatment violate McChan's right to be free from cruel and unusual punishment. "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Estelle, 429 U.S. at 107; Perkins, at 811.

So, too, the fact that more extensive care might have been of benefit to McChan is not determinative. The issue is not whether McChan could have received better care, but whether the Defendants were deliberately indifferent or intentionally denied him access to necessary medical care. Estelle v. Gamble. Even if McChan's dental providers were mistaken in their diagnosis or treatment, there would be, at most, a question of negligence. However, there is no evidence that any of them was responsible for the "unnecessary and wanton infliction of pain," and even if their treatment had constituted medical malpractice, it would not be actionable under §1983, as noted above. Defendants offered McChan treatment other than periodontal surgery, based on their assessment of his condition. This constitutes, at most, a difference of opinion with McChan's assessment and is not sufficient to show the requisite culpable state of mind. McChan has failed to raise an issue of fact on the subjective element of the deliberate indifference test.

In a case involving a gunshot wound sustained by the plaintiff prior to his incarceration, the

Tenth Circuit affirmed the district court's grant of summary judgment for the defendants, rejecting the plaintiff's claim that defendants were deliberately indifferent to his medical needs in that they did not provide surgery for his gunshot wound:

> Mr. Tanner's belief that surgery is required demonstrates only a difference of opinion, not deliberate indifference. Even if a non-prison physician had recommended surgery as medically necessary, this difference in medical opinion would not amount to deliberate indifference.

Tanner, at *2. The same is true in the present case. Simple negligence, if any at all, or inadvertence, or a difference of opinion on an appropriate course of treatment, will not win the day for McChan.

## **Conclusion**

Summary judgment should be entered in favor of Defendants, because there is no genuine issue of any material fact which requires that the case proceed to trial. The order directing submission of a Martinez Report [Doc. 45] gave the parties notice that the report might be used in deciding whether to grant summary judgment of McChan's claims. *See*, Durtsche v. American Colloid Co., 958 F.2d 1007, 1009 n.1 (10th Cir. 1992), quoting Celotex, 477 U.S. at 326 ("district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*").

The Court finds that the dental treatment McChan received at New Mexico correctional facilities did not violate constitutional standards. "[T]he Eighth Amendment prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain' . . . or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399 (1981). Any alleged deficiency in the quality of dental care which McChan received in New Mexico prisons survives this exacting inquiry.

16

## **Recommended Disposition**

That summary judgment be entered in favor of Defendants.

_____
Lorenzo F. Garcia
United States Magistrate Judge